# Devers, Appellant, *v.* Sollenberger.

*Contract—False representation—Fraud.*

The false representation which will invalidate a contract must be of a material fact, known to be untrue by the party making it, or recklessly made without any sufficient ground for believing it to be true, or made by or on behalf of a party charged with the knowledge of the truth and intended to be acted upon by the person deceived, and actually misleading him to his injury.

*Contract—Subletting mail contract—Loss of profits.*

In an action by a government mail contractor against a person to whom the contractor had sublet the contract, where the plaintiff claims to recover for loss of profits resulting from the failure of the defendant to do his work, and also an additional sum alleged to have been expended by plaintiff in securing the cancelation of the contract, the plaintiff is not entitled to summary judgment for the latter sum where the affidavit of defense explicitly and unequivocally denies that any such sum or any part thereof was so expended.

*Appeals—Paper-book—Statement of question involved.*

An appellant's statement of the question involved as " Sufficiency of the affidavit of defense," does not adequately carry out the plain intent of the rule upon the subject.

Argued March 15, 1904.   Appeal, No. 2, March T., 1904, by plaintiff, from order of C. P. York Co., Jan. T., 1903, No. 20, discharging rule for judgment for want of a sufficient affidavit of defense, in case of Philip K. Devers v. Simon J. Sollenberger and United States Fidelity and Guaranty Company.   Before Rice, P. J., Beaver, Orlady, Smith, Porter, Morrison and Henderson, JJ.   Affirmed.

Assumpsit for breach of contract.

From the record it appeared that the plaintiff had a contract with the United States government to carry the mail over a particular route.   On August 19, 1901, plaintiff sublet the contract to defendant.   On May 24, 1902, defendant refused to continue the work.   Plaintiff then took up the service and carried it on until he secured from the government a cancelation of the contract.   He claimed $32.50 as net cost for performing the service after failure of the defendant; $631.62 costs of securing release from contract, and $564 three years'

profit loss.   The material portions of the affidavit of defense were as follow:

The defendant, Simon J. Sollenberger, was persuaded and induced to execute the said contract, by reason of certain false and fraudulent representations made to him before the signing thereof, by one——Sparks, who was the agent of and acted for the said plaintiff in the making of the said contract.   Before the defendant signed the said contract, to wit: on August 19, 1902, the said Sparks, representing and acting for the said plaintiff, for the purpose of inducing the defendant to sign the said contract, represented to the defendant that the performance of the service on the mail route, in said contract described, required but one horse and wagon and one driver; and further, representing to the defendant that the reason, and only reason, for having an additional wagon, as provided by the said contract, was to be prepared against accident to the regular wagon; whereas, in truth and in fact, proper performance of service on the route of said contract described required two wagons and horses and two drivers.   It was by reason of the said false and fraudulent representations so made that the defendant was induced to sign the said contract and undertake the performance thereof.

From August 19, 1901, to October 25, 1901, the defendant performed the service on the mail route, in said contract described, with one horse and wagon and one driver.   On or about October 26, 1901, the plaintiff ordered and directed the defendant to put into service upon the said route a second horse and wagon and driver, and to continue the said second horse and wagon upon the said route without any further or additional consideration therefor, refusing to pay or, allow the defendant anything in addition to the sum named in the said contract, for or on account of the said second horse and wagon and driver.

From October 26, 1901, to May 24, 1902, the defendant, Sollenberger, always protesting against the additional service required of him, as aforesaid, and denying his obligation to perform the same under his said contract, and demanding additional compensation therefor, continued carrying the United States mails upon the route aforesaid, using two horses and wagons and two drivers in the performance of the work.

The contract between the said plaintiff, Philip K. Devers, and the post-office department of the federal government, was made under postal laws and regulations of the said post-office department, which said laws and regulations constitute a part of said contract. By section 1296 of said postal laws and regulations, it is provided as follows: " No contractor for transporting the mails within or between the United States and any foreign country shall assign or transfer his contract, and all such assignments or transfers shall be null and void."

By section 1297 of said postal laws and regulations it is provided as follows: " No subletting or transfer of any mail contracts shall be permitted without the consent in writing of the postmaster general; and whenever it shall come to the knowledge of the postmaster general that any contractor has sublet or transferred his contract, except with the consent of the postmaster general as aforesaid, the same shall be considered as violated, and the service may be again advertised as herein provided for; and the contractor and his sureties shall be liable on their bond to the United States for any damage resulting to the United States in the premises."

The said Philip K. Devers violated the said postal laws and regulations when he sublet said contract to the defendant, Sollenberger, and under the provisions of the postal laws and regulations, above quoted, the contract so made by the said Philip K. Devers with the said Sollenberger was null and void.

When the said Philip K. Devers sublet his said contract to the defendant, Sollenberger, his contract with the said post-office department was thereby violated and of no further effect.

The defendant, Sollenberger, admits that, on July 1, 1902, the contract between the said plaintiff and the post-office department of the United States government, in plaintiff's statement mentioned, was canceled and annulled, and the said plaintiff thereafter relieved from any and all duty and obligation thereunder.

The defendant, Sollenberger, denies that the plaintiff's costs and expenses in obtaining the cancelation of his said contract with the said post-office department was $631.62, or any part thereof.

The defendant denies that, by reason of defendant's failure to continue the carrying of mails on the route in said contract described, the plaintiff has suffered a loss of $1,228.12, or any part thereof. The defendant denies that, by reason of the premises, the plaintiff has lost prospective profits to the amount of $564, or any part thereof.

*Error assigned* was order discharging the rule for judgment.

*John F. Kell*, for appellant.

*J. S. Black*, with him *John A. Hoober* and *Charles A. Hawkins*, for appellee.

OPINION BY RICE, P. J., April 18, 1904 :

The representation alleged to have been made by the plaintiff's agent, that the performance of the service " required but one horse and wagon and one driver," is ambiguous. It may have referred to what the service required at the time the representation was made, in which case the falsity of it would seem to be negatived by the other averments of the affidavit to the effect that for a time the defendant was able to perform the service with one horse, wagon and driver. And, even if it be construed to mean that the performance of the service for the whole period of the contract would require but one horse, wagon and driver, the representation would seem to amount to no more than an expression of opinion or a prediction, which, though mistaken, would not constitute a fraud for which the defendant could avoid his express contract to " at all times keep on hand, and subject to the order of the party of the third part, a sufficient number of horses of the required quality and condition to perform the service at any and all times." As the case must go to a jury trial we will not discuss this question further. It is sufficient for the present purpose to say that the allegations of the affidavit, without more, are insufficient to bring the case within the general rule that the false representation which will invalidate a contract must be of a material fact, known to be untrue by the party making it, or recklessly made without any sufficient ground for believing it to be true, or made by or on behalf of a party charged

with knowledge of the truth, and intended to be acted upon by the person deceived, and actually misleading him to his injury.

Whether the contract constituted a "subletting or transfer" of the plaintiff's contract with the government, within the meaning of the postal laws and regulations set forth in the affidavit of defense, and whether the defendant could defend his breach of the contract by proof that it was made without the consent of the postmaster general, are questions we are not required to decide at this time. The bare allegation that the plaintiff "violated said postal laws and regulations when he sublet said contract to the defendant" leaves us in doubt whether the defendant relies on section 1296, quoted in the affidavit, or on section 1297. If on the latter, the fact that the plaintiff did not obtain the written consent of the postmaster general ought to have been plainly and unequivocally alleged and not left to inference.

It is claimed that the plaintiff is entitled to recover the difference between the sum which he would have received from the government if the defendant had carried out his contract and the sum which the plaintiff had obligated himself to pay the defendant. There would be plausibility in this contention if the plaintiff could not have performed the service required by his contract with the government at a profit, or could not relet the contract for a less sum than he was to receive from the government. Nor are we prepared to say that the averments of the statement are insufficient to sustain a claim for loss of profits. But without expressing a more decided opinion as to this element of the plaintiff's damages, or upon the general question as to the measure of damages, we think it clear that he is not entitled to judgment for alleged loss of profits and the additional sum, $631.68, which he alleges he expended in securing the cancelation of his own contract with the government; this for the sufficient reason, if for no other, that it is explicitly and unequivocally denied in the affidavit of defense that his costs and expenses in obtaining such cancelation amounted to the sum alleged or any part thereof. This denial is specific enough to entitle the defendant to a jury trial, where, upon a fuller development of the facts, the proper measure of damages can be more intelligently determined,

We deem it our duty to say that the appellant's statement of the question involved, namely, "Sufficiency of the affidavit of defense," does not adequately carry out the plain intent of the rule upon the subject as set forth in the explanatory note thereto. The fact that we do not quash the appeal is not to be regarded as making the case a precedent for that mode of stating the question. The only other meritorious objection raised against the appellant's paper-book has been removed by amendment.

Appeal dismissed at appellant's costs without prejudice, etc.